UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENNIFER SMITH,

      Plaintiff,

v.                               Case No: 6:24-cv-457-PGB-RMN

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY
BOARD OF TRUSTEES,
ALLYSON WATSON, DENISE D.
WALLACE, LATONYA BAKER,
LATRECHA SCOTT, RICA
CALHOUN, GRAY ROBINSON,
P.A., JULIE ZOLTY, RICHARD
E. MITCHELL and SARAH
REINER,

      Defendants.
_____/

## ORDER

This cause is before the Court on Defendant Florida Agricultural & Mechanical University ("**FAMU**") Board of Trustees' ("**Defendant FAMU**") Motion to Transfer Venue. (Doc. 161 (the "**Motion**")). The Plaintiff Jennifer Smith ("**Plaintiff**") filed a Response in Opposition. (Doc. 167). Upon consideration, Defendant FAMU's Motion is granted, and the litigation is transferred to the United States District Court for the Northern District of Florida, Tallahassee Division.

I.  **BACKGROUND**

The Plaintiff was a tenured professor employed by the FAMU College of Law. (Doc. 151, ¶¶ 28–29). A law student reported a negative interaction with the Plaintiff and asserted her belief that the Plaintiff violated the University Code of Conduct by her behavior. (Doc. 151-6, p. 6). On December 5, 2023, following an investigation by the Office of Compliance and Ethics, the Provost and Vice President for Academic Affairs informed the Plaintiff of the University's intent to dismiss her from employment on January 19, 2024. (*Id.* at p. 1).

Plaintiff initially filed a Complaint and an Amended Complaint against Defendant FAMU in the Ninth Judicial Circuit in Orange County, Florida. (Doc. 1, ¶¶ 1–2). Defendant FAMU removed the matter to the Middle District of Florida, Orlando Division on March 4, 2024. (*Id.* ¶¶ 8–13). On August 18, 2024, the Second Amended Complaint was filed after a previous attempt to amend the complaint was denied on procedural grounds. (Docs. 132, 149, 151). Thus far, only Defendant FAMU is a party Defendant in this lawsuit, and Defendant FAMU moves to transfer venue from the Middle District of Florida to the Northern District of Florida under the home venue privilege.[1]

---

[1] Plaintiff amended the allegations to include eight individual defendants and a law firm. (Doc 151). Summonses were issued on July 16, 2024, but the record does not indicate the newly-added defendants have been served. (Docs. 100, 101, 102, 103, 104, 105, 106, 107, 110). Moreover, the Second Amended Complaint that had been filed by Plaintiff immediately prior to the issuance of these summonses was later stricken by this Court. (Doc. 132).

2

## II.   LEGAL STANDARD

"The home venue privilege provides that, absent waiver or exception, venue in a suit against the State, or an agency or subdivision of the State, is proper only in the county in which the State, or the agency or subdivision of the State, maintains its principal headquarters." *Fla. Dep't of Children & Families v. Sun-Sentinel, Inc.*, 865 So. 2d 1278, 1286 (Fla. 2004). The purpose of this rule is to promote "orderly and uniform handling of state litigation." *Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 363-64 (Fla. 1977). That said, because this privilege is merely a state procedural rule, it does not bind a federal court, and federal law controls the question of proper venue. *See Stewart Org. v. Ricoh, Corp.*, 487 U.S. 22, 29–30 (1988) (noting that the Federal Rules govern the transfer of venue and that focusing on a single state policy or venue rule would defeat Congress's command that multiple considerations govern transfer within the federal court system); *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) ("The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes." (citations omitted)); *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001) (holding that "the question of venue is governed by federal law, not state law"); *Murphree v. Miss. Pub. Corp.*, 149 F.2d 138, 140 (5th Cir. 1945)[2] (noting that "where a federal statute fixed the venue of the federal courts, state laws are inapplicable").

---

[2]   The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Under Federal Rule of Civil Procedure 12(h), the defense of improper venue is waived unless the defendant includes it in defendant's first Rule 12 motion or, if no such motion is filed, in the answer to the complaint. *See Tucker v. Blackfisk Marine, LLC*, No. 22-61953-CIV-DIMITROULEAS, 2023 WL 1429762, at *2 (S.D. Fla., Jan. 31, 2023); *Laptev v. Wallendorf*, No. 1:21-cv-20281-GAYLES, 2022 WL 16745308, at *2 (S.D. Fla. Nov. 7, 2022).[3] As the Court noted in *Hollis*, 28 U.S.C. § 1441(a) "does not give a removing defendant a choice of districts to remove to," and once an action is removed the Defendant may seek a transfer under 28 U.S.C. § 1404(a).[4] 259 F.3d at 1300 (citations omitted).

## III. DISCUSSION

Defendant FAMU was required to remove the state court action to the Orlando Division of the Middle District of Florida under § 1441(a). In doing so, Defendant FAMU did not waive the right to seek a transfer of venue to the Northern District of Florida, Tallahassee Division. *See Hollis*, 259 F.3d at 1300 ("Because § 1441(a) does not give a removing defendant a choice of districts to remove to, it may not be entirely accurate to characterize removal as the voluntary relinquishment of a legal right."). The Court therefore rejects Plaintiff's argument

---

[3] Even so, the trial court may exercise its inherent authority to allow a motion to dismiss to be amended to include an otherwise waivable defense. *See Tucker*, 2023 WL 1429762, at *2 (citing *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002)).

[4] The Court need not address whether the Defendant waived the Rule 12(b)(3) defense of improper venue, since the issue before the Court is whether a transfer of venue under § 1404(a) is proper.

4

that, by stating in the notice of removal that venue is proper under § 1441(a), (Doc. 1, ¶ 11), FAMU waived its right to relief under § 1404(a), (Doc. 167, p. 3). *Hollis* stands for precisely the opposite proposition. Defendant FAMU thus retained the right to seek a transfer of venue to the Northern District of Florida.[5] The question before the Court is whether a transfer of venue to the Northern District of Florida is appropriate here.

The Court is mindful that cases should be brought and tried in the district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). This is a matter of judicial economy. As a result, § 1404(a) empowers the Court to "transfer any civil action to any other district or division where it might have been brought." In considering whether to transfer a case pursuant to § 1404(a), absent consent among the parties, the district court must engage in a two-step inquiry. The court must determine whether the case could have been filed in the proposed district. *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000). Next, the Court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Id.* "[U]nder section 1404(a), the burden is on the movant to

---

[5] The Court rejects Plaintiff's argument that Defendant FAMU should have ignored § 1441(a) and removed the matter to the Northern District of Florida. (Doc. 167, p. 9). Plaintiff cites *Peterson v. BMI Refractories*, 124 F.3d 1386, 1388 (11th Cir. 1997), where the defendant removed the state court action to the Northern District of Alabama instead of the Middle District where the state action had been commenced. (*Id.* at pp. 9–10). The Eleventh Circuit noted that failure to comply with the geographic requirements of 28 U.S.C. § 1441(a) is a procedural defect that does not deprive a district court of subject matter jurisdiction over the removed action. *Peterson*, 124 F.3d at 1338. That said, if a motion to remand is filed it must be granted. Defendant FAMU's decision to adhere to the unambiguous mandate in § 1441(a) does not constitute a waiver of its right to seek a change of venue under § 1404(a).

establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). In making this determination, courts consider several factors. These factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight given a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*See Colo. Boxed Beef Co. v. Coggins*, No. 8:07-cv-00223-T-24-MAP, 2007 WL 917302, at *3 (M.D. Fla. Mar. 23, 2007).

The Plaintiff is correct that Defendant FAMU's reliance on § 1406 is misplaced. (Doc. 167, p. 15). Nevertheless, in its motion to transfer venue, Defendant FAMU discussed the factors pertinent to the Court's analysis under § 1404(a). Defendant FAMU avers that venue is proper in the Northern District of Florida, because Plaintiff "sued the University twice in Leon County, [the] situs of the Northern District of Florida, both times claiming violation[s] of 29 U.S.C. §§ 206 and 215" ("**The Equal Pay Act**" or "**EPA**"). (Doc. 161, p. 2). The Second Amended Complaint ("**SAC**") includes claims arising under the EPA and for retaliation under the EPA. (Doc. 151, ¶¶ 150–60). Accordingly, Plaintiff could have commenced this action in the Northern District of Florida, Tallahassee Division.

The other claims raised in the SAC also have a nexus to the Northern District of Florida. Plaintiff alleges breach of the contract between Plaintiff and the FAMU

6

Board of Trustees, which is located in Tallahassee. (*Id.* ¶¶ 161–68). Plaintiff asserts a claim for First Amendment Retaliation with her termination being the penultimate step in the retaliation. (*Id.* ¶¶ 169–76). The SAC also contains claims for Title VII sex discrimination and retaliation, and the Plaintiff identifies Provost Allyson Watson, whose office is in Leon County, as the decisionmaker with regard to her termination. (*Id.* ¶ 188).

Plaintiff also sued the law firm Gray Robinson and some of its lawyers for allegedly conspiring with the FAMU Board of Trustees to violate her civil rights and failure to prevent the conspiracy. (*Id.* ¶¶ 191–209). It is unclear from the SAC where Gray Robinson attorneys Richard E. Mitchell, Julie Zolty, and Sarah Reiner reside. The alleged involvement of the law firm and counsel is outlined with broad and conclusory language. But the crux of the allegations is that the firm and counsel conspired with the University, and FAMU's General Counsel Ms. Wallace, to terminate Plaintiff in retaliation for her exercise of protected activity. (*Id.* ¶¶ 7, 91–98, 191–209). The SAC asserts a single claim for Section 1983 Civil Conspiracy against the "University Employees." (*Id.* ¶¶ 210–21). The role of each "university employee" in the conspiracy is described with generalities. The gist of the alleged conspiracy claim is that the university employees undertook actions designed to support "Defendants Watson and Wallace['s] . . . ultimate decision to terminate Plaintiff," and that they "communicated with reviewers in the process of Plaintiff's internal appeals to influence or otherwise suggest she be terminated." (*Id.* ¶ 217). Finally, Plaintiff asserts a Due Process claim and avers that Defendant FAMU

7

employed "biased and partial internal complaint reviewers who acted as the cat's paw for Defendants Wallace and Watson, who themselves had knowledge of Plaintiff's pending Equal Pay Act lawsuit, rendering any internal appeal futile and violating Plaintiff's right to an impartial decisionmaker." (*Id.* ¶ 225).

Defendant correctly observes that "[t]he University is a public university within the State University System of Florida, and the University Board of Trustees is constitutionally created and empowered to govern it." (Doc. 161, pp. 3–4). *See* FLA. CONST. art. IX, § 7(b), (c); FLA. STAT. § 1000.21(9)(c) ("'State university,' except as otherwise specifically provided, includes the following institutions and any branch campuses, centers, or other affiliates of the institution: . . . The Florida Agricultural and Mechanical University."). The principal headquarters of FAMU is located in Tallahassee, Leon County, Florida. Plaintiff alleges in the SAC that Ms. Watson, the Provost of the University, whose office is in Leon County, was the "decisionmaker" in her termination. (Doc. 151, ¶ 188). Moreover, the Office of Compliance and Ethics that investigated the student complaint against Plaintiff is in Leon County. (*See generally* Doc. 151). Plaintiff alleges that "the Compliance report dated June 5, 2023, recommended that Provost Watson and Dean Keller '[c]onsider if additional processes need to be implemented to address internal complaints to the law school and the transfer of complaints to investigative University offices.'" (*Id.* ¶ 51). The Investigative Report advising Mr. Robinson, President of FAMU, that Plaintiff retaliated against the student was authored by Rita Calhoun. (Doc. 151-6, p. 5). Both Ms. Calhoun and Mr. Robinson are in

8

Tallahassee. (*Id*.). And the review panel for Plaintiff's due process conference is located in Tallahassee. (*Id*. at pp. 1–2, 52–53; Doc. 151-7).

The Plaintiff avers that witnesses, including the student who filed the complaint, and FAMU employees who "are likely to give the most substantive testimony about the Equal Pay violation and complaints giving rise to this lawsuit" are in Orlando, Florida. (Doc. 167, p. 16). Recognizing Defendant FAMU has the burden of proving venue should be transferred under § 1404(a), Plaintiff is still required to support the contention that the bulk of the relevant witnesses are located in this District. Plaintiff does not explain how "Dean Keller, . . . Patricia Broussard, Markita Cooper, Associate Dean Reginald Green, [and] other professors who teach Constitutional Law" are relevant to the Equal Pay claim. (*Id*. at p. 16). The SAC only lists Ewanrinareto Imoukhuede as a comparator. (*See* Doc. 151, ¶ 29). The mere speculation that these witnesses "are likely to give the most substantive testimony about the Equal Pay violation" is not persuasive. (Doc. 167, p. 17). Similarly, Plaintiff's assertion that the "added defendants" are located in the Middle District of Florida is not substantiated. The Court also notes that it has no proof that any of the added defendants have been served with the SAC, and none of the added defendants are currently parties to this action. On balance, the investigation and subsequent decision to terminate Plaintiff was made in Tallahassee, and the witnesses relevant to that decision and the alleged retaliation

9

are located in Leon County.[6] The convenience of the witnesses favors the Northern District of Florida.

Plaintiff concedes that the location of documents is neutral or "slightly favors" her. (*Id.*). The latter is evidenced only by the employment contract having been signed in Orlando. (*Id.*). The Court finds the location of documents to be neutral. As Plaintiff notes, "the rise of electronic discovery and media [is] such that most documents are kept digitally." (*Id.*). The availability of process to serve witnesses also favors Tallahassee as the proper venue. The key players in this dispute reside in the Northern District, outside the subpoena power of the Court. The Northern District is familiar with the governing law and has presided over the Plaintiff's two prior EPA suits against Defendant FAMU. (Doc. 161, p. 4). The Plaintiff contends that litigating the case in Tallahassee is inconvenient because she cares for her elderly father who cannot travel with her to the Northern District. (Doc. 167, p. 17). Litigating in Tallahassee, a four-hour drive, does not require relocating to Tallahassee. While the Court is mindful of the weight given to a plaintiff's choice of forum, the other considerations heavily weigh in favor of transferring venue to the Northern District of Florida. The home venue privilege does not dictate the outcome here. However, transferring the case to the Northern District of Florida, where FAMU resides, promotes the "orderly and uniform

---

[6] Plaintiff asserts the student who filed the complaint is in Orlando. (Doc. 167, p. 16). Plaintiff notes that the student's complaint was unsubstantiated, but the Compliance report found Plaintiff's retaliation was substantiated. It is thus unlikely that evidence of the underlying complaint is relevant to the issue of retaliation or breach of contract.

handling of state litigation." *See Carlile*, 354 So. 2d at 363-64. Further, trial efficiency and the interests of justice are served by transferring the case to the Northern District of Florida.

## IV.   CONCLUSION

For these reasons, Defendant FAMU's Motion to Transfer Venue (Doc. 161) is **GRANTED**. The Clerk of Court is directed to transfer this case to the Northern District of Florida, Tallahassee Division, and to close the case.

**DONE AND ORDERED** in Orlando, Florida on September 11, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

11